# FAUSETT v. GENERAL ELECTRIC CONTRACTS CORPORATION et al.

No. 6251.   Decided April 9, 1941.   (112 P. 2d 149.)

Rehearing Denied June 23, 1941.

For opinion on rehearing, see 100 Utah, 265 114 Pac. 2d 205.

*Fabian, Clendenin, Moffat & Mabey,* of Salt Lake City, and *S. J. Sweetring,* of Price, for appellants.

*F. B. Hammond,* of Price, for respondent.

PRATT, Justice.

On July 7, 1938, Max Fausett purchased from the Carbon Furniture and Appliance Company a Hot Point refrigerator. The purchase was made upon a title retaining note, for $216.64, upon which $75 was paid cash down and the balance was to be paid at the rate of $10 per month for 13 months and $11.64 for the fourteenth month. The contract contained the usual clause that for a failure in payment of any installment when due the unpaid balance shall at once become due and the seller "may, without notice or demand, by process of law or otherwise, take possession of" the refrigerator wherever located, and retain all moneys paid

thereon for the reasonable use thereof, and sell the refrigerator to satisfy the balance unpaid.

The Carbon Furniture and Appliance Company was a partnership consisting of William Holdaway and one Earl Fausett, an uncle of Max Fausett. This partnership dissolved, William Holdaway continuing the business so far as the contract in question here is concerned. On July 8, 1938, the partnership sold the title retaining contract to the General Electric Contracts Corporation, a company which makes a business of purchasing such contracts.

On or about May 29th, 1939, in the absence of Max Fausett and his family from their home, William Holdaway entered and repossessed the refrigerator. Subsequently he sold it for $100.

Max Fausett instituted this suit against the General Electric Contracts Corporation and William Holdaway, the latter as agent of the former, to recover possession of the refrigerator or its value, and also $250 damages for its detention. The case was tried by the court before a jury. The latter returned a verdict in favor of plaintiff for $184.14 as the value of the refrigerator and damages in the sum of $75 for its wrongful retention by defendants. The defendants appealed the case.

Before considering the merits of the case, we are met with a motion to dismiss the appeal on the ground that it was prematurely taken. Notice of appeal in this case was served and filed between the time the lower court denied defendant's motion for a new trial and the time he ruled upon defendant's motion to retax costs. Plaintiff contends that the judgment was not final until costs were determined. Section 104-44-14, R. S. U. 1933, provides for costs to the party in whose favor judgment has been rendered. Section 104-44-16, R. S. U. 1933, provides that the clerk shall include in the judgment entered by him the costs, if the same have been taxed or ascertained. In this latter section is included the following words,

"* * * if not included in the judgment," (the clerk shall) "insert the amount thereof in a blank left in the judgment for that purpose, and make a similar insertion of the costs in the copies and docket of the judgment."

Section 104-30-12, R. S. U. 1933, states that a judgment shall be deemed entered when the same is signed by the judge and filed with the clerk. This section also provides for entering of judgment in the judgment book. Section 104-30-14 provides for the making of the judgment roll after entering judgment. By section 104-30-15, R. S. U. 1933, the clerk, after filing the judgment roll, shall make proper entries of the judgment in the judgment docket. Keeping in mind the chronological order of the requirements of these sections and viewing them in the light of the words quoted above, we find that the costs may be inserted by the clerk in the judgment docket after the judgment has been entered there, which entry is made subsequent to the entry of judgment as required by section 104-30-12. An appeal may be taken from final judgments (Section 104-41-1, R. S. U. 1933), and the time begins to run from the entry of the judgment (Section 104-30-12) or order appealed from (Section 104-41-2, R. S. U. 1933, as amended by Chapter 123 Laws of Utah 1939). Thus we see in determining a final judgment and the time for taking an appeal our Code does not contemplate the inclusion of costs as necessary to the finality of the judgment, nor as a condition precedent to the taking of the appeal. Costs are a creature of statute. The final judgment contemplated by the sections of our Code on appeal is the judgment upon the issues joined in the pleadings; the judgment that determines the right in controversy between the parties litigant. *Omega Investment Company* v. *Woolley*, 75 Utah 274 284 P. 523. The motion to dismiss the appeal is denied.

Upon the merits of the case we believe appellant should prevail. It is apparent from the pleadings and the testimony and exhibits introduced that at the time the refrigerator

was repossessed, May 29, 1939, the balance due on the contract was $66.64. If the payments had been made as required by the terms of the contract, that balance would have been $31.64 $216.64, less the $75 deposit, minus eleven payments of $10 each or $110, leaves $31.64). Thus the payments at the time apparently were more than three months behind. This period was longer than the "grace period" of fifteen days upon which respondent lays some stress. The wording of the contract covering this period is: "If payments are not made within 15 days after due date, buyer agrees to pay late charge of 5c per dollar in addition to regular installment." Giving respondent the benefit of that period as a grace period does not avail him anything.

Respondent contends that the defendant company gave him additional time within which to pay. He relies considerably upon the "grace period" above and also the acceptance of payments after he hed been in default at previous times. The record discloses that his payments were delinquent from the first, that numerous letters were sent to him or his wife upon the delinquencies, and that after many such duns payments were made by him. It would be strange to allow him to take advantage of a situation created by himself, and claim that because he finally conceded the justification of some of those demands the company by accepting payments waived all future defaults. None of the letters written by the company to Mrs. Fausett indicated any indefinite extension of time.

Respondent lays stress upon the fact that he tendered to the company the balance of $66.64 due upon the contract. However, that tender did not occur until after the refrigerator was repossessed by Mr. Holdaway. Assuming the latter was agent for the company, the company was under no obligation at that time to accept the tender. It was too late.

Before closing we wish to discuss one more issue. Respondent claims that he did not receive credit for some

$40 paid Mr. Holdaway, made up of $10 paid during the "winter months" of 1938-1939, $15 paid about March 14, 1939, and $15 paid the fore part of May, 1939. In making this contention, however, respondent overlooks the fact that in his pleading he alleges:

"that under date of April 27, 1939, the plaintiff" (respondent) "was in arrears on said contract the sum of $25.00 and on said date the defendant General Electric Contracts Corporation granted the plaintiff a further extension of time, to suit the plaintiff's convenience, in which to pay the said arrears."

This allegation is consistent with the company letter of that date—April 27, 1939—; is consistent with a letter of April 6, 1939, by Mrs. Fausett, wherein she admits being in arrears; and is consistent with the balance of the pleadings which although they do not directly admit $66.64 to be the final balance, admit that balance by implication arising out of a tender of that sum as the balance and not as an offer of settlement of a controversy. Accepting $25 as the arrears on April 27, and accepting the payment of $15 in the early part of May as being true, there was on May 29th still $10 in arrears plus the $10 that became due May 25th, and the company or Mr. Holdaway was therefore entitled to possession of the refrigerator. Incidently, respondent in his brief states his payments started August 25, 1938. By the contract and the complaint they started July 25, 1938. Respondent does not claim his pleadings are in error.

The question of whether or not Holdaway was an agent of the company becomes immaterial in view of the fact that at the time the refrigerator was repossessed, either the company using Holdaway as its agent, or Holdaway as a repurchaser of the contract, had the right under the terms of the contract to take the refrigerator.

When the parties rested their case appellant, defendant General Electric Contracts Corporation, moved for a directed verdict. This motion was denied. The denial was assigned as error and argued in the brief. The motion should

have been granted, as plaintiff (respondent) failed to prove that at the time he sued for the return of the refrigerator he was entitled to its possession. For a discussion upon the element of right to possession in such actions see *Bush* v. *Bush,* 55 Utah 237, 184 P. 823. Also *Pulsipher* v. *Chinn,* 69 Utah 401, 255 P. 439.

The judgment is reversed and the case remanded to the lower court, with directions to enter a judgment of no cause of action in favor of defendants and appellants.

Costs to appellants.

MOFFAT, C. J., and WOLFE and McDONOUGH, JJ., concur.

LARSON, J., dissents.